# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **LAURA CORTESE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cv-00531** |
| | ) | |
| **OTSUKA AMERICA** | ) | |
| **PHARMACEUTICAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Laura Cortese worked as a health science advisor for Otsuka America Pharmaceutical, Inc. ("Otsuka") in Nashville. She became pregnant, took approved Family and Medical Leave Act (FMLA) leave in July 2023, and returned to work in January 2024. Within days, her manager asked her whether she was doing overnight trips on her route, remarked that she had no vacation days left, and repeatedly inquired about her childcare arrangements. In February, Otsuka's HR team audited Cortese, identified policy violations, and terminated her. Cortese sues under Title VII and the FMLA, alleging that Otsuka terminated her because of her sex and pregnancy status and for taking leave. Otsuka moves to dismiss both claims, and the motion is ripe for decision. (Doc. Nos. 16, 17, 22).[1] The question is whether the temporal proximity of the pregnancy and leave to the comments and termination can plausibly sustain those claims. The answer is yes. The motion to dismiss (Doc. No. 16) will be denied.

---

[1] Otsuka moved to dismiss the original Complaint (Doc. No. 12) before Cortese filed her First Amended Complaint ("FAC") (Doc. No. 15). That motion is still pending and will be denied as moot. Crawford v. Tilley, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss.").

# I.    FACTUAL BACKGROUND[2]

Cortese began working for Avanir Pharmaceuticals in 2021.  (FAC ¶ 18).  Otsuka acquired Avanir in 2022, and Cortese accepted a transfer to a health science advisor position in Nashville beginning January 2023.  (Id. ¶¶ 19-22).  She performed well, ranking in the top third in company sales.  (Id. ¶ 23).

Cortese became pregnant in 2023 and requested leave.  (Id. ¶ 24).  Otsuka granted her FMLA leave beginning July 19, 2023, authorizing sixteen total weeks of paid FMLA and short-term disability leave.  (Id. ¶¶ 25-26).

When Cortese returned to work in January 2024,[3] her manager, Tracy Monfort, asked whether Cortese was doing "overnights" as part of her sales route.  (Id. ¶¶ 28-29).  Cortese explained that she was completing all scheduled office visits but preferred to return home each night to care for her newborn.  (Id. ¶ 30).  No Otsuka policy required overnight stays, and Monfort did not ask similar questions of other employees.  (Id. ¶¶ 31-32).  Monfort also made remarks about Cortese's leave and childcare—including a comment suggesting Cortese had no vacation days remaining—and repeatedly inquired about Cortese's childcare arrangements.  (Id. ¶¶ 33-36).  Monfort did not make such comments to other employees.  (Id. ¶ 37).

Otsuka's HR team later initiated an "allegedly random audit" of Cortese's files.  (Id. ¶ 38).  Cortese was not told in advance that the meeting would concern her sample documentation and

---

[2] Unless noted otherwise, the Court draws the facts from the First Amended Complaint ("FAC") (Doc. No. 15) and assumes the truth of the allegations to rule on the motion.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] There is a discrepancy between the allegations that Cortese returned "during the first week of January 2024" (FAC ¶ 28) and the sixteen total weeks of leave alleged, which would place the return in approximately November 2023.  The Court takes as true the January 2024 return date for purposes of ruling on this motion.

provider-visit records. (Id. ¶¶ 39-41). She answered HR's questions, and was later told that no further action was required. (Id. ¶ 42).

Otsuka terminated Cortese at the end of February 2024 for three reasons: (1) she failed to visit a doctor; (2) she failed to use the "staff only detail" button in Otsuka's recording system; and (3) improper sample documentation. (Id. ¶¶ 43-50). According to the FAC, the first reason was false, the second was an inadvertent error, and the third had already been resolved. (Id.). The FAC labels all three reasons as "pretexts for unlawful discrimination and retaliation." (Id. ¶ 44).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Venema v. West, 133 F.4th 625, 632 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). When determining whether the complaint meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

## III.    ANALYSIS

Otsuka asserts that Cortese fails to state a claim for either Title VII discrimination or FMLA retaliation. (Doc. No. 16 at 10-15). It contends that the FAC contains no facts from which the Court can infer that Otsuka took any adverse action because of Cortese's pregnancy or her FMLA leave, and that Cortese's admission to violating company policy defeats her claims. (Id. at 12-14). Otsuka also attaches two exhibits—a territory map and termination talking points—and asks the Court to consider them as incorporated into the FAC. (Id. at 3, 9-10).

3

Cortese responds that the FAC satisfies the pleading standard, that she need not plead a prima facie case of discrimination, and that the reasonable inferences from her allegations support both claims. (Doc. No. 17 at 7-8, 14-21). She also argues that the Court cannot consider Otsuka's exhibits without converting the motion to one for summary judgment. (Id. at 9-14).

The Court agrees with Cortese. The FAC plausibly alleges that Otsuka terminated Cortese because of her sex and pregnancy status, and that the termination was retaliatory for taking FMLA leave. The Court also declines to consider Otsuka's exhibits, which are not properly before it.[4]

A.     The FAC Plausibly Links the Termination to Cortese's Sex and Pregnancy Status

To state a claim under Title VII, Cortese must plead facts from which the Court can reasonably infer that Otsuka discriminated against her with respect to her "compensation, terms, conditions, or privileges of employment because of" her sex or pregnancy. 42 U.S.C. § 2000e-2(a)(1); id. § 2000e(k). Cortese need not identify a similarly situated comparator that was treated differently from her or show that she was replaced by someone outside her protected class at the pleading stage. Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012).

The FAC alleges that Otsuka discriminated against Cortese by firing her because of her sex and pregnancy status. To link the termination to her protected status, Cortese primarily relies on two things: Monfort's comments and the temporal proximity of her leave to the HR audit and termination. Both support that inference.

Monfort's comments were rude and intrusive, to say the least. Worse yet, they directly implicate Cortese's sex and pregnancy status. The comments—even if made to gather information

---

[4] The Court has reviewed Otsuka's attached exhibits and is disappointed that Otsuka asks that the Court consider them. Cortese did not refer to these documents in the FAC—she referred to comments from Monfort about her route and discussed the audit and termination in general terms. Otsuka is seeking to contradict allegations that the Court must take as true, which is plainly improper on a Rule 12(b)(6) motion. The Court declines that invitation.

for a legitimate managerial purpose—presumably were only made because Cortese is a woman who recently had a child.

Those comments plausibly link the termination to Cortese's sex and pregnancy status. Shortly after, Otsuka's HR team initiated an "allegedly random" audit of Cortese's records. (FAC ¶ 38). As Cortese's direct manager, the Court can reasonably infer that Monfort played some role in initiating that audit, or, at a minimum, in the termination decision that followed. It is reasonable to infer that Otsuka would not have terminated Cortese without consulting her direct manager. And while the audit identified compliance issues, they were minor—a doctor who did not remember a visit, a button-coding error, and a documentation issue that had already been resolved. (Id. ¶¶ 45-50). For an employee who consistently ranked "in the top third of the company in sales" (id. ¶ 23), those are thin grounds for termination.

The temporal proximity of the events reinforces causation. Cortese returned from pregnancy leave in January 2024. (Id. ¶ 28). Monfort's comments began immediately. (Id. ¶¶ 29-37). The audit followed shortly after. (Id. ¶ 38). And Otsuka ultimately terminated Cortese at the end of February—less than sixty days after her return. (Id. ¶ 43). That condensed timeline, coupled with Monfort's comments and managerial discretion, plausibly supports an inference of discrimination based on Cortese's sex and pregnancy status.

The FAC also plausibly alleges that Otsuka's stated reasons for the termination were pretextual. (Id. ¶ 44). A reasonable reading of the sequence of events supports that allegation: a return from pregnancy leave; comments from a manager directed at Cortese's protected status; an audit; and a termination based on minor compliance issues.

Finally, Cortese contends that "ordinary rules of notice pleading" govern and that she need not plead a prima facie case of discrimination. (Doc. No. 17 at 7-8, 14-16). She relies on Keys,

which held that a Title VII plaintiff does not have to plead the elements of a prima facie case of discrimination to survive a motion to dismiss. 684 F.3d at 609. True, Cortese does not have to plead, for example, that Otsuka replaced her with someone outside her protected class or that it treated her differently from a similarly situated comparator. Id. To the extent that Cortese contends that a lesser standard than plausibility governs the legal sufficiency of her pleading, that is plainly incorrect. Keys itself applied the plausibility standard from Twombly and Iqbal in assessing whether a plaintiff sufficiently pleaded causation on her discrimination claim. Id. at 610. In any case, Cortese's claim survives under either standard.

Because the FAC plausibly links Cortese's termination to her sex and pregnancy status, the Title VII claim survives.

### B. The FAC Plausibly Links the Termination to Cortese's FMLA Leave

To state a claim for FMLA retaliation, Cortese must plead facts from which the Court can reasonably infer that Otsuka terminated her because she took protected FMLA leave. 29 U.S.C. § 2615(a)(1)-(2); Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 282 (6th Cir. 2012).

The FMLA claim survives for substantially the same reasons as the Title VII claim. As with that claim, the close temporal proximity of Cortese's return from FMLA leave to Monfort's comments, the audit, and the termination—all within sixty days—plausibly supports an inference of retaliation. See Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 505 (6th Cir. 2014) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

Because the FAC plausibly links Cortese's termination to her FMLA leave, the FMLA claim survives.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss (Doc. No. 12) will be denied as moot, and the motion to dismiss (Doc. No. 16) will be denied.

An appropriate order will enter.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE